UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LUIGI FRANCESE,<br><br>Plaintiff,<br><br>v.<br><br>AM. MODERN INS. GRP., INC., *et al.*,<br><br>Defendants. | Civ. No. 2:17-2246 (WJM)<br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.:**

Defendants American Modern Insurance Group, Inc., and American Modern Home Insurance Company (collectively, "AMIG"); Residential Credit Solutions, Inc. ("RCS"); and Specialized Loan Servicing, LLC ("SLS") (jointly, "Defendants") move to dismiss Counts I and II in Plaintiff's Complaint for failure to plead fraud with heightened particularity. Next, Defendants RCS and SLS ("Loan Servicers") seek to dismiss the remaining contract-based causes of action—Counts III, IV, and V—for failure to state a claim. The matter was taken on submission without oral argument. FED. R. CIV. P. 78(b). For the reasons that follow, Defendants' Motions to Dismiss are **GRANTED** and Plaintiff's Complaint is **DISMISSED WITHOUT PREJUDICE**.

**I.    BACKGROUND**

After purchasing a home ("Property") and signing a Mortgage Agreement ("Agreement"), this dispute began when Plaintiff filed a claim for damage or loss to the Property. *See* AMIG's Notice of Removal, Ex. A, ¶¶ 6-21, ECF No. 1 [hereinafter "Compl."]; Samon Decl., Ex. 1, ECF No. 18-3. AMIG's representatives then inspected the Property as to the claimed damage and assessed "the total damages at $53,9433.14 [*sic*]," Compl. ¶¶ 8, 14, while Plaintiff averred over $322,000 in damages. *Id.* at ¶¶ 9, 16, 17. After an inspection, AMIG sent RCS, the then-Loan Servicer on Plaintiff's loan, $22,468.72, and then again sent RCS, who forwarded it to SLS, the new Loan Servicer, $25,750.62. Plaintiff argues the Loan Servicers wrongfully withheld these insurance proceeds, thereby unjustly enriching themselves. *Id.* at ¶¶ 38-40. Further, along with AMIG, Plaintiff contends the Loan Servicers conspired to offer a low dollar figure as to the Property damage claim, all part of an alleged unlawful kickback scheme. *Id.* at ¶¶ 24.e., 34.d.

1

This dispute over a failure to forward Plaintiff the insurance proceeds stems from a lender, in a mortgage agreement, requiring a borrower to maintain hazard insurance on a mortgaged property to protect the lender's interest in said property. If the borrower fails to maintain insurance coverage, at its option, the lender may purchase, at a borrower's expense, a force-placed—or "lender-placed"—insurance policy (hereinafter "FPI").

After failing to provide proof of hazard insurance, Plaintiff alleges his Loan Servicers—the lenders and mortgage holders on his Property—wrongfully force-placed the required insurance in buying FPI at a premium that was likely more expensive than a borrower-purchased insurance policy. Through written warning notices, the Loan Servicers notified Plaintiff of its actions. The two notices included the annual premium, the effective insurance backdate, and advised that if Plaintiff provided proof of insurance, RCS and SLS would cancel its FPI and refund Plaintiff any premium payments made. Both notices explained in bold typeface how FPI would likely be more expensive than borrower-purchased coverage and how it represented limited coverage. *See* Pl.'s Decl., Exs. A-B, ECF No. 25-1. Although Plaintiff's Agreement allowed Defendants to procure FPI absent proof of insurance, Plaintiff contends Defendants had an exclusive arrangement to buy and sell high-premium FPIs which were unreasonable to protect the interest in the Property. Defendants then collected the FPI premiums and unknown excess amounts and redistributed the sums disguised as commissions and other fees not attributable to insuring the Property. Plaintiff labels the commission or fee a "kickback." Compl. ¶ 24.

Through its unlawful kickback scheme, Plaintiff alleges Defendants committed consumer fraud and engaged in and conspired to violate New Jersey's Civil RICO statute ("RICO") through its unconscionable commercial practices in misleading unsophisticated borrowers into purchasing or agreeing to FPI. Also, although permitted under the Agreement to withhold the Property damage claim's insurance proceeds, Plaintiff asserts the Loan Servicers breached it and thereby unjustly enriched themselves.[1] In all, instead of purchasing hazard insurance, Plaintiff filed suit and Defendants timely removed.

---

[1] Covenant 5. Property Insurance.

> Borrower shall keep . . . the Property insured against loss by fire, hazards . . . and any other hazards . . . for which Lender requires insurance . . . . If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense . . . . [S]uch coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. . . . In the event of loss, . . . any insurance proceeds, whether or not the underlying insurance was required by the Lender, shall be applied to restoration or repair of the Property, if restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold

2

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss, a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). Apart from the complaint, a court may consider an "undisputedly authentic document" included as an exhibit in a party's motion to dismiss. *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

Under Federal Rule of Civil Procedure 9(b), "a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place

---

> such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. . . . If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument . . . .

Covenant 9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.

> If . . . Borrower fails to perform the covenants and agreements contained in this Security Instrument . . ., then Lender may do and pay for whatever is reasonable and appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including . . . repairing the Property.

> Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

> Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument.

Samon Decl., Ex. 1, ECF No. 18-3.

the defendant on notice of the precise misconduct with which [it is] charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (citation and internal quotations omitted). That is, "the who, what, when, where, and how: the first paragraph of any newspaper story." *Institutional Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242, 253 (3d Cir. 2009) (internal quotation marks and citation omitted).

### III. DISCUSSION

The Court will discuss, in turn, the state consumer fraud and RICO claims against all Defendants and then the contract-based claims against RCS and SLS.

#### A. The New Jersey Consumer Fraud Act ("CFA") Claim Against All Defendants (N.J. STAT. ANN. § 56:8-1, *et seq.*)

First, Defendants argue Plaintiff has failed to meet Rule 9(b)'s requisite specificity. Second, AMIG—joined by RCS—aver the CFA offers no relief because, in not purchasing a good or service, Plaintiff cannot qualify as a "consumer." Since Plaintiff has failed to state a viable CFA claim with the required particularity, the Court need not discuss the qualified consumer argument.

To begin, Plaintiff must allege the Defendants engaged in an unlawful practice that caused an ascertainable loss and show a causal nexus between the defendants' illegal acts and the plaintiff's ascertainable loss. *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc.*, 929 A.2d 1076, 1086 (N.J. 2007) (per curiam) (citation omitted). In New Jersey, an "unconscionable" commercial practice denotes a "lack of good faith, honesty in fact and observance of fair dealing." *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994) (internal quotations and citation omitted).

Plaintiff has failed here to allege with particularity an unconscionable commercial practice. The vague pleading lacks distinction among the three Defendants' conduct to put those parties on notice. Instead, it teems with allegations that Defendants engaged in unlawful conduct that fueled a fraudulent FPI kickback scheme. As it stands, the Agreement and the warning notices to purchase lender-procured FPI put Plaintiff on notice. Plaintiff describes the fees and commissions Defendants received as "kickbacks" but injects no factual precision and substantiation to answer the who, what, when, where, and how questions. Indeed, attaching a "kickback" label fails to transform alleged business conduct into unconscionable acts. If anything, asking Plaintiff to purchase hazard insurance was a reminder of the Agreement's contractual obligations. Absent the required particularity, Plaintiff cannot simply call an FPI commission or fee a kickback. Thus, Plaintiff's CFA claim misses the heightened plausibility mark.

#### B. The New Jersey Civil RICO Claim Against All Defendants (N.J. STAT. ANN. § 2C:41-1 *et seq.*)

Next, Plaintiff alleges Defendants acted through an enterprise in the residential insurance and real estate market to engage and participate in a pattern

4

of racketeering activities through using deceptive FPI practices. To show a pattern of racketeering activity, Plaintiff must show that at least two racketeering predicate acts are related and continuous. *Prof'l Cleaning and Innovative Bldg. Servs., Inc. v. Kennedy Funding Inc.*, 408 F. App'x 566, 572 (3d Cir. 2010). To show an "enterprise," Plaintiff must plead facts that demonstrate oversight and coordination of the racketeering acts and other activities on an ongoing basis. *State v. Ball*, 661 A.2d 251, 261 (N.J. 1995).

What Plaintiff pleads here represents nothing more than bare conclusions, i.e., Defendants operate in the residential insurance and real estate markets which makes AMIG, RCS, and SLS an enterprise that has conspired and engaged in unlawful conduct. *See* Compl. ¶¶ 27-34. Like the deficient CFA claim, Plaintiff has merely applied labels to alleged conduct. The pleading fails to specify the alleged misrepresentations and how the Defendants operated its enterprise apart from the pattern of racketeering activity. Hence, Plaintiff's RICO claim fails to comport with Rule 9(b)'s heightened pleading requirements.

### C. Unjust Enrichment Against RCS and SLS

With an unjust enrichment claim, Plaintiff must allege "the defendant received a benefit and that retention of the benefit would be inequitable." *Hassler v. Sovereign Bank*, 374 F. App'x 341, 345 (3d Cir. 2010) (citation omitted). To allege the withheld benefit as being unjust requires showing the Loan Servicers were "enriched beyond its contractual rights." *Id.* at 345 (citation omitted). The presence of a valid, express contract involving the same subject between the parties precludes an unjust enrichment claim. *See Hassler v. Sovereign Bank*, 644 F. Supp. 2d 509, 519 (D.N.J. 2009) (citing cases), *aff'd*, 374 F. App'x 341 (3d Cir. 2010).

The unjust enrichment claim bristles with severity that infect Plaintiff's pleading alone. As discussed above, the Agreement's covenants and the sent notices of lender-purchased FPI disclosed to Plaintiff that the Loan Servicers' decision to purchase FPI was to ensure its own—not Plaintiff's—interest in the Property. The Agreement disclosed the consequences for Plaintiff's failure to purchase hazard insurance. Plaintiff's argument as to Defendants being in exclusive possession of unspecified evidence carries no water because, on the AMIG-issued Mortgage Security Policy, RCS is the named insured and loss payee.[2] *See* AMIG Mot. to Dismiss, Ex. A (Part 1), ECF No. 16-2. Also, the Agreement authorized RCS and SLS to withhold the insurance proceeds until satisfactory completion and inspection of repairs. The pleading lacks mention of any repair work being performed. And even if repairs were made, per the

---

[2] Plaintiff cited Ninth Circuit cases to support an argument for relaxing Rule 9(b)'s pleading standard—and refrain from pleading specific instances of conduct—to which this Court finds unavailing. Even so, the Ninth Circuit suggested it *may* be appropriate to relax the heightened pleading Rule if evidence is within a party's exclusive possession. *See United States ex rel. Tamanaha v. Furukawa Am., Inc.*, 445 F. App'x 992, 994 (9th Cir. 2011) (emphasis added) (citation omitted).

5

Agreement's covenants, the monies would go towards the Property's outstanding loan balance, not Plaintiff's pocket. All in all, since the Agreement authorized the Loan Servicers' to receive the insurance proceeds, the unjust enrichment claim falls short.

### D. Breach of Contract and the Implied Covenant of Good Faith and Fair Dealing Against RCS and SLS

Plaintiff next maintains he "properly performed," under the Agreement's terms, *see* Compl. ¶ 43, and, in almost identical allegations, claims RCS and SLS failed to hand over the insurance proceeds and thus broke the Agreement and implied covenant of good faith. *Id.* at ¶¶ 41-45, 46-50. To establish a viable breach of contract claim in New Jersey, a plaintiff must allege the parties were part of a valid contract, the defendant failed to perform its obligations under the contract, and, because of the breach, the plaintiff suffered damages. *Sheet Metal Workers Int'l Ass'n Local Union No. 27, AFL-CIO v. E.P. Donnelly, Inc.*, 737 F.3d 879, 900 (3d Cir. 2013) (citation and footnote omitted). All parties in a contract remain "bound by a duty of good faith and fair dealing in both the performance and enforcement of the contract." *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 864 A.2d 387, 395 (N.J. 2005). "The implied duty of good faith and fair dealing does not operate to alter the clear terms of an agreement and may not be invoked to preclude a party from exercising its express rights under such an agreement." *Fields v. Thompson Printing Co., Inc.*, 363 F.3d 259, 271-72 (3d Cir. 2004) (internal quotations and citations omitted).

Like the unjust enrichment claim, the two contract-based claims fall below the post-*Twombly* pleading bar. There lacks the asserted breach here because the Agreement specifically contemplated, in Covenant 5, a lender's action to withhold the insurance proceeds and to either apply the proceeds to repairing the Property or to paying off the outstanding loan balance. *See* Samon Decl., Ex. 1. And any Property damage under the Mortgage Security Policy would affect the insured-RCS' interest. *See* AMIG Mot. to Dismiss, Ex. A (Part 1). Even more so, there lacks an express statement in the Agreement that entitles Plaintiff to collect the insurance proceeds.

As the breach of contract claim subsumes the implied duty of good faith found in every contract, this claim too ends in defeat. The bad faith claim simply restates the breach allegation, adding the appropriate labels: "bad faith" and "breach of implied covenant of good faith and fair dealing." *See* Compl. ¶ 50. Like the others, this claim contains unadorned allegations that fail to meet the post-*Twombly* pleading standard. *See Iqbal*, 556 U.S. at 678 (stating a party must plead facts beyond ones "merely consistent with a defendant's liability") (internal quotation marks and citation omitted). And as to issuing the insurance proceeds, Plaintiff remains silent on whether the Agreement contained unclear terms.

## IV. CONCLUSION

For the above-stated reasons, Defendants' Motions to Dismiss are **GRANTED** and Plaintiff's Complaint is **DISMISSED WITHOUT PREJUDICE**. An appropriate order follows.

*/s/ William J. Martini*
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: October 25, 2017**