# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **LUIGI FRANCESE, on behalf of himself and all others similarly situated,** | |
| **Plaintiff,** | Civ. No. 2:17-2246 |
| | **OPINION** |
| **v.** | |
| **AM. MODERN INS. GRP., INC.,** *et al.*, | |
| **Defendants.** | |

**WILLIAM J. MARTINI, U.S.D.J.:**

This matter comes before the Court upon Defendants American Modern Insurance Group, Inc.'s and American Modern Home Insurance Company's (collectively, "AMIG"), Residential Credit Solutions, Inc.'s ("RCS"), Specialized Loan Servicing, LLC's ("SLS"), Southwest Business Corporation's ("SWBC"), and American Security Insurance Company's ("ASIC") motions to dismiss. ECF Nos. 97, 99–102. The Court decides the matter on the papers without need for oral argument. L. Civ. R. 78.1(b). For the reasons set forth below, Defendants' motions to dismiss are **GRANTED**.

## I. BACKGROUND[1]

The Court assumes familiarity with the facts and procedural history of this case, as set out in the Court's prior opinion. ECF No. 29 at 1–2. Plaintiff Luigi Francese ("Francese") alleges his mortgage loan servicers (RCS and SLS) and insurers (AMIG, SWBC, and ASIC) charged borrowers for "kickbacks" when buying force-placed or lender-placed hazard insurance policies ("LPIs"). *See* Second Am. Compl. ¶¶ 11–17, 22–44, ECF No. 63 ("SAC"). He also asserts RCS, SWBC, and AMIG together undervalued losses on LPI-covered properties and that, when his Property suffered damage, misappropriated the insurance proceeds. *Id.* ¶¶ 14, 91.

---

[1] In motions to dismiss, a court may consider a document referenced in the complaint if the document is central to the plaintiff's claims and its authenticity is not in question. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The Court thus considers the loan documents attached as exhibits in Defendants' motions to dismiss.

## A. Individual Allegations

### 1. The Mortgage Loan

Francese owns real property in New Jersey (the "Property"), for which he signed a mortgage loan (the "Mortgage"). *Id.* ¶¶ 45–46. RCS originally serviced the Mortgage, and then in 2016, SLS took over as the loan servicer. *Id.* ¶ 48. Francese's Mortgage required him to maintain insurance on the Property "in the amounts . . . for the periods that Lender requires." *Id.* ¶ 47; AMIG Br., Ex. A, ECF No. 98-1. If he failed to maintain adequate, continuous insurance, then:

Lender may obtain insurance coverage, *at Lender's option and Borrower's expense*. . . . [S]uch coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, . . . and might provide greater *or lesser* coverage than was previously in effect. *Borrower acknowledges that the cost of the [Lender] insurance coverage so obtained might significantly exceed the cost of the insurance that Borrower could have obtained.*

*Ibid.* (emphasis added). And if a loss occurred, then:

[A]ny insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. . . . *If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument*, . . . with the excess, if any, paid to Borrower.

*Ibid.* (emphasis added). The Mortgage further provided that, "[i]f (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, . . . then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument[.]" AMIG Br., Ex. A.

### 2. The Lender-Placed Insurance Policies and Insurance Proceeds

In New Jersey, the Commissioner of the Department of Banking and Insurance ("Commissioner" or "DOBI") approves and regulates insurance rates. N.J. Stat. Ann. § 17:29AA-5. Once an insurer submits its rate, the Commissioner must review and either approve or disapprove the rates. *Id.* § 17:29A-7. Also, the Commissioner can only approve "rates that are not unreasonably high . . . and are not unfairly discriminatory." *Id.*; *see id.* § 17:16V-3g ("[LPI] costs charged to the debtor shall not be excessive or discriminatory. Any cost or element of cost which is approved by the [DOBI] or filed with the department and not disapproved . . . shall not be deemed to be excessive or discriminatory."); *In re N.J. Title Ins. Litig.*, 683 F.3d 451, 453 (3d Cir. 2012) (noting same as to title insurance rates).

In 2014 and 2015, when Francese failed to provide evidence of his own insurance, RCS sent "several" letters informing him that it had obtained AMIG LPI certificates that covered the Property. SAC ¶ 49; AMIG Br., Ex. C. The letters warned Francese that LPI

premiums may be "much higher" than if he obtained his own insurance, the LPI "coverage provided may be less" than securing insurance himself, and that "[p]art of the policy premium may be used by [AMIG] to reimburse" RCS for expenses incurred in placing the LPI policies. AMIG Br., Ex. C at 1–11. The letters also informed Francese that if he provided proof of coverage, RCS would cancel the policy. *Id.*

SWBC "administer[ed] the lender-placed insurance program for RCS," SAC ¶ 5, and issued RCS the AMIG LPI certificates, AMIG Br., Ex. C at 3, 7, 11 ("Evidence of Insurance" documents). When RCS obtained the LPI policies, the listed annual premiums were within the Residential Hazard-Lender Placed insurance rates AMIG filed with, and approved by, DOBI: $1.00 for each $100 of coverage. *See* AMIG Br., Ex. D (Decl. of Steve Mackie), Exs. D-1, D-2 (AMIG rate filing excerpts); Decl. of Michael J. Fitzpatrick, Ex. 5, ECF No. 101-2.

In June 2015, the Property "sustained extensive damages due to an incident," SAC ¶ 51, rendering it "not habitable due to damage and mold infestation," *id.* ¶ 61. AMIG inspected the Property, covered the loss, and paid RCS the insurance proceeds. *Id.* ¶¶ 54–55. RCS forwarded the second and final AMIG claims payment to the new loan servicer, SLS. *Id.* ¶ 55. Neither RCS nor SLS sent Francese the insurance proceeds. *Id.*

In 2016, when SLS took over as the loan servicer, it sent Francese "several" letters about maintaining hazard insurance on the Property. SAC ¶ 50; Decl. of Ronald K. Wilson ("Wilson Decl."), Exs. 1, 2, 4, 5, 7, ECF No. 99-1. Francese failed to fulfill his insurance obligation, so SLS notified him that it bought LPI policies from ASIC, naming itself as the insured. SAC ¶ 50; Wilson Decl., Ex. 3, 6, 8. The ASIC LPI policies covered the Property, with annual premiums falling within the DOBI-approved rate. Wilson Decl., Exs. 3, 6, 8.

### B. Class Allegations

Francese's amended class action complaint arises out of the forced placement of hazard insurance on his Property. *First*, he contends Defendants "manipulate[d] the . . . LPI market through collusive agreements involving kickback arrangements and other forms of improper compensation." SAC ¶ 11 (the "LPI Kickback Scheme"). Specifically, in exchange for buying LPI policies, insurers (e.g., AMIG and ASIC) paid lenders and loan servicers (e.g., RCS and SLS) "kickbacks, often euphemistically termed commissions, as a percentage of the force-placed charges ultimately imposed on borrowers[.]" *Id.* ¶ 16. *Second*, RCS and AMIG "also engaged in a scheme to materially undervalue insurance claims made on property insured by a[n LPI] policy and to delay unreasonably or deny entirely the release of insurance monies in order to make necessary repairs and restoration to the property." *Id.* ¶ 14 (the "Insurance Benefits Scheme").

Francese asserts 12 causes of action on behalf of himself and all other persons similarly situated (unless otherwise noted):

- Count I: Violations of the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-2, for the LPI Kickback Scheme against SLS and ASIC. He alleges the same in his individual capacity only against RCS, SWBC, and AMIG;

- Count II: Violations of the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-2, against RCS, SWBC, and AMIG for the Insurance Benefits Scheme;

- Counts III and IV: Violations of the Federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962 *et seq.*, and New Jersey Civil RICO, N.J. Stat. Ann. § 2C:41-1 *et seq.*, against SLS and ASIC for the LPI Kickback Scheme;

- Counts V and VI: Breach of Contract and the Implied Covenant of Good Faith and Fair Dealing against RCS and SLS for the LPI Kickback Scheme;

- Count VII: Breach of the Implied Covenant of Good Faith and Fair Dealing against RCS for the Insurance Benefits Scheme;

- Count VIII: Tortious Interference with a Business Relationship against ASIC, SWBC, and AMIG for the LPI Kickback Scheme;

- Count IX: Tortious Interference with a Business Relationship against AMIG and SWBC for the Insurance Benefits Scheme;

- Count X: Unjust Enrichment against RCS and SLS for the Insurance Benefits Scheme;

- Count XI: Civil Conspiracy against Defendants for the LPI Kickback Scheme and against RCS, SWBC, and AMIG for the Insurance Benefits Scheme; and

- Count XII: Violations of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, against SLS and in his individual capacity only against RCS for the LPI Kickback Scheme.

*Id.* ¶¶ 80–169.

## II.    LEGAL STANDARD

In a Rule 12(b)(6) motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all plausible allegations in the complaint as true and credit all reasonable inferences in the plaintiff's favor. *See Bell Atl. Corp.*, 550 U.S. at 555. But a court cannot "'accept

unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation.'" *Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017) (quoting *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (en banc)).

## III.   DISCUSSION

Defendants LPI kickback claim arguments fall into two broad categories. *First*, the filed rate doctrine bars the claims. *Second*, even if the doctrine does not apply, the allegations miss the plausibility mark. As to the insurance benefits claims, RCS, SWBC, and AMIG contend Francese has failed to allege sufficient facts showing he was entitled to recover the insurance proceeds. *See generally* Defendants' Mots. to Dismiss Brs.

### A.   The Filed Rate Doctrine Bars Francese's LPI Kickback Claims

The law in New Jersey, where the Property is located, directs that "every insurer shall, before using or applying any rate to any kind of insurance, file with the commissioner a copy of the rating-system upon which such rate is based, . . . fixed or determined." N.J. Stat. Ann. § 17:28A-6. "[T]he [filed rate] doctrine holds that any filed rate . . . [approved by the governing regulatory agency] is per se reasonable and unassailable in judicial proceedings brought by ratepayers." *In re N.J. Title Ins. Litig.*, 683 F.3d at 461 n.7 (quotation marks and citation omitted). Two principles underlie this doctrine: (1) nondiscrimination – prohibiting price discrimination by insurers among ratepayers and (2) nonjusticiability – preserving a regulatory agency's role in approving reasonable rates and excluding courts from second-guessing rate making practices. *See id.* at 455–56 (citation omitted). "[T]he doctrine applies strictly whenever *either* the nondiscrimination strand or the nonjusticiability strand . . . is implicated." *Id.* at 459 (citation omitted) (holding the filed rate doctrine's nonjusticiability strand applied, thus barring claims challenging alleged "payoffs, kickbacks, and other charges that are unrelated to the issuance of title insurance or the business of insurance," and concluding "[t]his result is also appropriate under New Jersey law"); *McCray v. Fidelity Nat'l Title Ins. Co.*, 682 F.3d 229, 241–42 (3d Cir. 2012) (The filed rate doctrine's nonjusticiability strand barred wrongful conduct claims involving kickbacks because deciding what should have been a reasonable title insurance rate in the past is "a function that regulatory agencies are more competent to perform." (citation omitted)).

Francese's LPI kickback allegations—that Defendants acted collectively to inflate premiums—represent attacks on Defendants' underlying conduct, implicating both the nonjusticiability and nondiscrimination principles. As to the nonjusticiability issue, the complaint is replete with allegations challenging the reasonableness of the LPI premiums charged. SAC ¶ 23 (SLS, RCS, AMIG, and ASIC agreed "to manipulate the [LPI] market and inflate the amounts charged to Plaintiff and other similarly situated borrowers"), ¶ 24 (AMIG and SWBC "provided RCS with subsidized mortgage services which kicked back a percentage of the [LPI] charges to RCS as an unearned commission"), ¶ 39 ("SLS is incentivized through unlawful inducements from ASIC to purchase and force place insurance policies which include charges in excess of the actual cost of the insurance."), ¶ 97 (Together, SLS and ASIC forced "borrowers to pay high premiums for [LPI],"

through a scheme [] that inflated such premiums to cover kickbacks and other unearned fees."); ¶ 125 (RCS and SLS "manipulat[e] the [LPI] market by selecting insurers [here, AMIG and ASIC] that will artificially inflate premiums to include kickbacks to RCS and SLS and issue excess insurance coverage not necessary to cover RCS's and SLS's risk[.]"). Thus, to grant relief would compel the Court to second-guess LPI premiums charged, which would impermissibly undermine DOBI's authority in regulating insurance rates. Because the nonjusticiability principle applies, Francese cannot plausibly plead the LPI kickback claims.

The nondiscrimination principle also bars the LPI kickback claims. Here, Francese cannot use litigation as a means to obtain preferential rates. *See Rothstein v. Balboa Ins. Co.*, 794 F.3d 256, 263 (2d Cir. 2015) ("Any damages recovered by these Plaintiffs would operate 'like a rebate . . . to give [them] a preference' over other borrowers who were charged for LPI. While non-suing borrowers serviced by GMAC would be billed at the filed LPI rates, Plaintiffs would enjoy the discount that Newport allegedly provided to GMAC." (quoting *Keogh v. Chi. & Nw. Ry. Co.*, 260 U.S. 156, 163 (1922))). Thus, the LPI kickback claims also implicate the nondiscrimination principle because recovering damages would result in Francese paying a preferential LPI rate unavailable to non-suing borrowers.

Francese relies on *Alston v. Countrywide Financial Corporation*, 585 F.3d 753 (3d Cir. 2009), as binding precedent, but that decision is inapposite. "Although it discussed the filed rate doctrine in the context of the Real Estate Settlement Procedures Act ('RESPA') in *Alston*, the Third Circuit has not yet decided whether the doctrine bars the [LPI] claims at issue here." *Santos v. Carrington Mortg. Servs., LLC*, 2015 WL 11071479, at *1 (D.N.J. Sept. 2, 2015). The court in *Alston* "briefly address[ed]" the filed rate doctrine and discussed neither the nonjusticiability or nondiscrimination principles. *Id.* at 763. *Alston* held the filed rate doctrine did not bar RESPA claim based on private mortgage insurance overcharges because RESPA provided a private right of action and prescribed remedy of treble damages. *See Alston*, 585 F.3d at 764. Thus, the Third Circuit explained there was "no need to parse or second guess rates." *Id.* (citation omitted). That is not the case here. And two courts of appeal have held the filed rate doctrine bars LPI kickback claims. *See Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314, 1325–27 (11th Cir. 2018) *and Rothstein*, 794 F.3d at 262. "[T]hat other district courts within this Circuit have applied *Alston*'s holding to non-RESPA claims" does not bind this Court. *Santos*, 2015 WL 11071479, at *1. Thus, the Court finds *Alston* neither conflicts with *In re New Jersey Title Insurance Litigation* or *McCray*, nor does it control here.

### B. Francese Fails to State the Insurance Benefits Claims

Francese has failed to plausibly plead how he can recover the insurance proceeds. RCS, as the loan servicer, is the named insured under the LPI policies. AMIG Br., Ex. B-1 at 1, 7–8 (directing RCS receive any loss payments), Ex. B-2, at 1, 7 (same). Besides, the Mortgage directed that if repairs were "not economically feasible or Lender's security would be lessened," then RCS could apply the insurance proceeds to the principal loan

balance. *Id.*, Ex. A at 7. Accordingly, AMIG paid RCS, not Francese, because that is what the insurance contract required. The LPI policies contained unambiguous terms showing the contracting parties (RCS and AMIG) had no intention to make Francese a beneficiary. *See Ross v. Lowitz*, 120 A.3d 178, 189 (N.J. 2015) ("As a general rule, an individual or entity that is a stranger to an insurance policy has no right to recover the policy proceeds."); *Rieder Cmtys., Inc. v. Twp. of N. Brunswick*, 546 A.2d 563, 566–67 (N.J. Super. Ct. App. Div. 1988) (Absent the contracting parties intending to confer a benefit on others, "a third party has no cause of action [even though] it may derive an incidental benefit from the contract's performance."). And no Mortgage term, policy, or law compelled a lender obtaining an LPI policy to provide Francese coverage.

In all, RCS, SWBC, and AMIG conducted a regular business transaction authorized under both the Mortgage's terms and LPI policies. Therefore, Francese has no right to recover the insurance proceeds arising under the LPI policies and thus cannot sufficiently plead the claims tied to the Insurance Benefits Scheme.

### C.  To Grant Leave to Amend Would be Futile

"Leave to amend should be freely given when justice so requires, including for a curative amendment unless such an amendment would be inequitable or futile." *Free Speech Coalition, Inc. v. Att'y General of U.S.*, 677 F.3d 519, 545 (3d Cir. 2012). Here, no amendment could cure the deficient LPI kickback and insurance benefits claims.

As to the LPI kickback claims, the filed rate doctrine bars the Court from meddling with DOBI's regulatory authority over insurance rates. *See In re N.J. Title Ins. Litig.*, 683 F.3d at 456. And no repleading could make the insurance benefits claims plausible because Francese has no established right to receive the insurance proceeds stemming from the LPI policies. Therefore, amendment would be futile and leave to amend is **DENIED**.

### IV.   CONCLUSION

Based on the foregoing, Defendants' motions to dismiss are **GRANTED**. Francese's Second Amended Complaint is **DISMISSED in its entirety with prejudice**. An appropriate order follows.


          */s/ William J. Martini*
          **WILLIAM J. MARTINI, U.S.D.J.**


**Dated: April 16, 2019**